**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIELLE AND JOSEPH OCHMAN, JR., individually and on behalf of their son Daniel Ochman | CIVIL ACTION NO. 3:12-cv-88 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| WYOMING SEMINARY. | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is Defendant Wyoming Seminary's Motion to Dismiss. (Doc. 14.)  In their Amended Complaint, the Plaintiffs, Danielle and Joseph Ochman, seek reimbursement from Wyoming Seminary for failing to provide the educational services promised for their son, Daniel Ochman.  As for damages, they seek reimbursement of the amount already paid to Wyoming Seminary, $29,212.89, which they represent is only a "portion of the plaintiffs' good faith belief that their damages exceed the jurisdictional monetary limit of this Court."  Wyoming Seminary argues that this dispute cannot meet the $75,000 jurisdictional threshold for diversity jurisdiction under 28 U.S.C. § 1332.  Because the Ochmans have not properly pleaded a viable claim for the additional damages they seek, the statutory minimum has not been met and the Amended Complaint will be dismissed with leave to submit a further amended complaint.

**BACKGROUND**

Plaintiffs' Amended Complaint alleges the following.  Joseph and Danielle Ochman are Daniel Ochman's parents.  After graduating from high school, Daniel sought to attend a post graduate ("PG") program that would increase his chances of being able to eventually

attend a four year institution as a music major.  Defendant Wyoming Seminary made a variety of representations to the Ochmans about its particular PG program.  Daniel was offered an invitation to matriculate which he apparently accepted.  Although the contract between the parties contains a mandatory arbitration provision, it was a contract of adhesion.[1]

Daniel matriculated at Wyoming Seminary in August of 2010 and it soon became clear that he was not receiving the attention, guidance, or programming he was initially promised.  The Ochmans had candidly and repeatedly expressed to Wyoming Seminary that Daniel needed "an academic environment that would allow him to grow, mature, and become more confident" (Am. Compl. at ¶ 9, Doc. 4), and Wyoming Seminary "indicated that Daniel would have guidance and encouragement from start to finish" (*Id.* at ¶ 42). Instead, it became clear that nobody at Wyoming Seminary had read or appreciated Daniel's application nor appraised themselves of Daniel's particular strengths or weaknesses.  Among other issues, Daniel's dormitory room was separated from the other PG students, his college counselor failed to provide any guidance for him, he was transferred out of his only music class, and was allowed to skip classes.  Daniel was floundering at Wyoming Seminary and his teacher advisor even informed him that he should "just go home." (*Id.* at ¶ 40.) And, despite Danielle Ochman's repeated attempts to get help for her son, none was forthcoming.  Daniel left Wyoming Seminary in November of 2010.

---

[1]On January 26, 2012, the Ochmans also filed a Motion for Hearing to Stay Arbitration Pending Litigation, which remains pending before the Court.  However, the Court will not make a determination on that Motion until subject matter jurisdiction is resolved.

The Ochmans had paid Wyoming Seminary $29,212,89 for its services.  They argue that since Wyoming Seminary failed to provide the represented educational services, it has breached its contract and has been unjustly enriched.   In particular, the Amended Complaint states:

> The Ochmans paid Wyoming Seminary for the educational services that had been represented to them for their son Daniel the sum of $29,212.89.  This amount represents a portion of the plaintiffs' good faith belief that their damages exceed the jurisdictional monetary limit of this Court.

(*Id.* at ¶ 43.)

On January 3, 2012, the Ochmans filed their original Complaint in the Middle District of Pennsylvania which brought claims under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* As such, that Complaint fell within the Court's federal question jurisdiction under 28 U.S.C. § 1331.  However, on January 31, 2012, the Ochmans filed an Amended Complaint which solely alleges a state law breach of contract claim and invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.   Wyoming Seminary has moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, arguing that diversity jurisdiction is inappropriate as this case fails to meet the $75,000 amount in controversy requirement set out in § 1332(a).[2]  This Motion has been fully briefed and is ripe for the Court's review.

---

[2]Although neither party disputes the existence of diverse citizenship, the Amended Complaint also fails to properly plead the citizenship of both parties.  And, "[w]hen the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977); *see also* Fed R. Civ. P. 12(h)(3). The Amended Complaint states that the "Plaintiffs reside at 56 Euston Road, Marlton, New Jersey 08053." (Am. Compl. at ¶ 1.)  However, residence is not the same as domicile and does not establish citizenship for diversity purposes.  *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal court to hear a claim or case. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000); *see also Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

When jurisdiction is predicated on diversity of citizenship, a matter must be between citizens of different states and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In cases where the relevant facts are not in dispute, the Court of Appeals has directed district courts to apply a legal certainty test, requiring a case be dismissed where "it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount." *Frederico v. Home*

---

Cir.1972) (citations omitted) ("Where one lives is prima facie evidence of domicile, but mere residency in a state is insufficient for purposes of diversity.") Further, the Amended Complaint states that Defendant Wyoming Seminary is "a private prepatory school with offices at 201 North Sprague Avenue, Kingston, Pennsylvania 18704-3593." (Am. Compl. at ¶ 2.) This does not specify what sort of legal entity Wyoming Seminary is and it is impossible to determine exactly what sort of citizenship allegations are even necessary. *Compare* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"), *with Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("the citizenship of an LLC is determined by the citizenship of its members.").

4

*Depot*, 507 F.3d 188, 194 (3d Cir. 2007).  If there are any threshold disputes about factual matters, those disputes shall first be resolved under a preponderance of evidence standard, and then the legal certainly test shall be applied.  *Id.* at 196; *Chrin v. Ibrix, Inc.*, 293 Fed. Appx. 125, 127 (3d Cir. N.J. 2008) (citations omitted) (explaining that a preponderance of evidence standard is first applied if there is disagreement over the underlying facts pertaining to the jurisdictional amount, but ultimately applying the legal certainty test.).

Determining whether a claim could exceed the statutory threshold requires looking at the complaint itself.  *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir. 1993).  "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 529 (E.D. Pa. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).  However, where an amount is open-ended, the "amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."  *Angus*, 989 F.2d at 146. Furthermore, "[i]n determining the amount in controversy, claims for punitive damages generally must be included in the computation."  *Carlough v. Amchem Prod., Inc.*, 834 F.Supp. 1437, 1457 (E.D. Pa.1993) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943)).

## II.  Analysis

Defendant Wyoming Valley argues that the Amended Complaint fails to allege facts indicating that the Ochmans are entitled to recover anything more than the $29,212.89 they paid to Wyoming Seminary.  As the Amended Complaint fails to point to any contractual terms that would allow the Ochmans to recover the sort of consequential damages they

seek, the action cannot advance on this theory of recovery and the overall available damages thus far below the statutory level to a legal certainty.

In Pennsylvania, "the relationship between a private educational institution and an enrolled student is contractual in nature." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). This contractual arrangement is derived solely from "the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.* As such, a complaint must point to specific failures on the part of a university within these written materials. *Id.* (finding that a complaint "cannot stand unless linked to the written policies of the university"); *see also Vurimindi v. Fuqua School of Business*, 435 Fed.Appx. 129, 133 (3d Cir. 2011) (finding that, under Pennsylvania law, "allegations must relate to a specific and identifiable promise that the school failed to honor."); *Gundlach v. Reinstein*, 924 F.Supp. 684, 689 (E.D. Pa. 1996) (finding that a complaint did not state a claim for relief under breach of contract where the plaintiff failed "to identify the specific benefits [the student] was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those promises.").

In the area of contract law, consequential damages include "those collateral losses, such as expenses incurred or gains prevented which result from the breach." *LBL Skysystems (USA), Inc. v. APG-America, Inc.*, 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004) (citation omitted). In order to recover such damages, it must be shown that they: (1) "would naturally and ordinarily result from the breach"; (2) "were reasonably foreseeable and within the contemplation of the parties at the time they made the contract"; and (3) "can be proved with reasonable certainty." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597

(3d Cir. 2009).

As an initial matter, the Amended Complaint makes no reference to any sort of consequential damages.  Instead, in its claim for breach of contract, it states that "Daniel Ochman has suffered damages as a result of the breach of contract by the defendant in addition to the amount paid in tuition by his parents."  (Am. Compl. at ¶ 55, Doc. 4.)  This cryptic statement[3] fails to meet Federal Rule of Civil Procedure 8 which requires "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).  *See*, *e.g., Sixth Angel Shepherd Rescue Inc. v. Pennsylvania SPCA*, CIV.A. 10–3101, 2011 WL 605697, at *4 (E.D. Pa. Feb. 15, 2011) ("Failure to specify relief sought beyond a 'general prayer' for judgment weighs in favor of dismissal for noncompliance with Rule 8.").  Moreover, to the extent the Plaintiffs clarify this claim in their brief, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) (quoting *Car Carriers, Inc. v. Ford Motor, Co.*, 745 1101, 1107 (7th Cir.1984)).

More fundamentally, the instant issue presents a question of fact–whether there exist any contractual provisions that would conceivably allow recovery of consequential damages for the lost wages of the Plaintiffs' son.  The Ochmans simply "assert that the Defendant breached its contract to provide educational services to their son Daniel such that he has been precluded from attaining his goal of attending a four year school with an academic

---

[3]As Defendant Wyoming Seminary points out, this particular claim also raises the issue of whether the Plaintiffs–Daniel Ochman's parents–have standing to bring a claim on behalf of their college-aged son.  Since the Amended Complaint does not properly plead this claim generally, the Court need not reach this issue.

study focused on music."[4]  (Pls.' Br. at 6, Doc. 23.)  Based on this, they believe that they are entitled to consequential damages for the difference "between the earning capacity of a music major graduating from a four year college as opposed to a music major who matriculates at a two year college and ultimately securing a college degree." (*Id.* at 7.)  The Ochmans have also supplied an affidavit, sworn by their attorney, affirming in pertinent part that an economic expert has opined that this difference in earnings will far exceed the amount necessary to meet the jurisdictional threshold.  (Coleman Aff. at ¶ 13, Doc. 24.)

The Ochmans have not, however, pointed to any specific terms within their contract with Wyoming Seminary that would support such damages, and their Amended Complaint therefore cannot proceed under such a theory.  This action sounds in contract, and, as noted above, a contractual relationship with a private school is limited solely to the terms of the parties' written agreements.  *See*, *e.g., Hart v. Univ. of Scranton*, ___ F. Supp. 2d ___, 2011 WL 6339826, at *3 (M.D. Pa. Dec. 16, 2011) (Caputo, J.) (finding a claim against a private university "must fail as a matter of law where [the plaintiff] has failed to point to any specific provisions breached by the University.").  Though the Ochmans argue that they consistently informed Wyoming Seminary of their son's goals, this does not reflect any identifiable promise that the school failed to honor.  Therefore, as the Ochmans have not

---

[4]The Ochmans argue that the Court should determine the amount in controversy as viewed from a plaintiff's particular perspective, and it is unclear how it would apply to this context where the claim is for contractual damages.  *See, e.g., Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d Cir. 1995) (finding it settled that in diversity suits for injunctions courts "measure the amount in controversy by the value of the rights which the plaintiff seeks to protect"); *Johnson v. Gerber Prods. Co.*, 949 F. Supp. 327, 330 (E.D. Pa. 1996) (nothing "the importance of the plaintiff's perspective in measuring the value of injunctive relief").

meet their burden on this factual inquiry by failing to point to any specific contract terms that would allow such recovery, the damages in this matter are deemed limited to $29,212.89 and are legally certain to fall below the statutory minimum for diversity jurisdiction.

## CONCLUSION

The Ochmans have failed to point to a contractual provision allowing them to recover the consequential damages they argue they are entitled to.   Therefore, because the Ochmans cannot, to a legal certainty, recover more than the statutory minimum for diversity jurisdiction, the Court cannot determine that diversity jurisdiction is warranted in this matter.

However, pursuant to 28 U.S.C. § 1653, the Plaintiffs will be permitted the opportunity to demonstrate that diversity-of-citizenship jurisdiction exists.  *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 204 (3d Cir. 2003) (noting that Section 1653 gives district courts "the power to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts.").   As such, the moving Defendants will be given twenty-one (21) days in which to file a second amended complaint including proper allegations of the amount in controversy and  diversity of citizenship.  (*See* footnote 2, *supra*).  Failure to do so will result in the action being dismissed.  An appropriate order follows.


 May 18, 2012                                                                    /s/ A. Richard Caputo
Date                                                                    A. Richard Caputo
                                                                    United States District Judge

9